[Cite as *State v. Bryant*, 2026-Ohio-2199.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-60 |
| Appellee | : | |
| | : | Trial Court Case Nos. 2024CR0134; |
| v. | : | 2025CR0518 |
| | : | |
| BREYON X. BRYANT | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 12, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

EPLEY, J., and HUFFMAN, J., concur.

**OPINION**

STEVEN H. ECKSTEIN, Attorney for Appellant
MEGAN A. HAMMOND, Attorney for Appellee

TUCKER, J.

{¶ 1} Breyon X. Bryant appeals from his conviction on charges of kidnapping, felonious assault, and rape following guilty pleas in two related cases.

{¶ 2} Bryant contends the guilty pleas, which he entered pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), were invalid because the trial court failed to satisfy the requirements for accepting an *Alford* plea. He also claims ineffective assistance of counsel invalidated the pleas.

{¶ 3} We conclude that Bryant knowingly, intelligently, and voluntarily entered *Alford* pleas, and the trial court properly accepted them. We see no ineffective assistance of counsel affecting the validity of the pleas. Accordingly, we affirm the trial court's judgment in both cases.

### I. Background

{¶ 4} In Greene C.P. No. 2024 CR 0134, a grand jury indicted Bryant on charges of rape, kidnapping, gross sexual imposition, disseminating matter harmful to juveniles, domestic violence, and three counts of felonious assault. He pleaded not guilty and later filed an unsuccessful suppression motion. In Greene C.P. No. 2025 CR 0518, the State filed a bill of information charging Bryant with rape, and he pleaded not guilty.

{¶ 5} Just before trial in the first case, Bryant appeared in court with counsel and stated that he wanted to plead guilty in both cases. A plea agreement provided for him to enter an *Alford* plea to charges of kidnapping and felonious assault in the 2024 case and to

rape in the 2025 case. In exchange, the State agreed to dismiss all other charges in the 2024 case. The agreement acknowledged Bryant's protestation of innocence and the fact that dismissal of the rape charge in the 2024 case eliminated the possibility of a life sentence. The State also agreed "to tender additional facts, on the record, to further establish the factual basis for the plea and the Court's finding of guilty."

{¶ 6} In connection with his guilty pleas, Bryant signed a form captioned "Rule 11 Notification and Waiver." It acknowledged that he was entering *Alford* pleas not as an admission of guilt "but rather because the evidence is strong and because I seek to avoid a greater penalty." The form also addressed the information covered by Crim.R. 11. It included Bryant's acknowledgment that his pleas were "voluntary without coercion, force or threats" and that no promises had been made beyond the terms of the plea agreement.

{¶ 7} The trial court discussed the *Alford* pleas at a change-of-plea hearing. Bryant stated that he and his attorney "thoroughly" had discussed the guilty pleas and potential defenses and that he was satisfied with counsel's advice. He also stated that his attorney had reviewed the Rule 11 notification and waiver form with him and had answered all questions.

{¶ 8} After discussing other issues with Bryant, the trial court returned to the *Alford* pleas, and the following exchange occurred:

THE COURT: So, Mr. Bryant, pursuant to *North Carolina v. Alford*, do you understand that by pleading guilty to these offenses by way of an *Alford* plea, you're doing so because pleading guilty and admitting—you would plead guilty and admit your guilt because the evidence is strong, and you seek to avoid a greater penalty; is that correct?

THE DEFENDANT: Yes, Your Honor.

3

THE COURT: And could you state on the record in regards to why—your innocence?

THE DEFENDANT: Okay. Well, today, I'm pleading guilty to [get the] benefit of the plea bargain. I acknowledge that the—that there is sufficient evidence to convict me at trial. There are damning text messages from my phone; however, I still maintain I did not rape Victim 1 and did not assault Victim 2.

{¶ 9} The prosecutor then recited the following factual basis for Bryant's guilty pleas in both cases:

So on Count 1 for the Bill of Information, I'd state to the Court that on or about the 14th day of November, 2023, in the City of Fairborn, Greene County, Ohio, the Defendant did engage in sexual conduct with Victim 1; victim 1 not his spouse, and that he did so by force, and more specifically, holding the victim down and then completing the act of vaginal penetration.

In Count 2 of the indictment, that being the kidnapping, the State tenders that evidence would show that on or about that same date and at the same location, a residence on Funderburg Road in the city of Fairborn, Greene County, Ohio, the Defendant did by force, threat, or deception remove Victim 1 from where she was found and/or restrained her liberty for the purpose of committing the felony of rape; and, more specifically, the victim had left the bedroom on several occasions against the Defendant's instructions. He then dragged her back down the hallway and into his bedroom, where he then committed the sexual assault or rape as further denied [sic] in Count 1 of the Bill of Information.

4

As to Count 5, which had—the dates have been amended from the initial indictment, the State has evidence that would show that on or between the 22nd day of January, 2022 and the 31st day of January, 2022, and at that same residence on Funderburg Road in Fairborn, Greene County, Ohio, Defendant did knowingly cause serious physical harm to Victim 2, the adult victim; and, more specifically, in this instance, the Defendant strangled the victim to the point where she lost consciousness for a period of time and then later woke up in the bathtub with the Defendant spraying her with cold water, which then allowed her to regain consciousness.

So with those being additional facts placed on the record in response to the Defendant's *Alford* plea, the State would simply ask the Court to consider those facts and what the State proffers would be shown at trial as the evidence in this case.

{¶ 10} At the conclusion of the hearing, the trial court found Bryant's *Alford* pleas to be knowing, intelligent, and voluntary. It also found that he "was motivated to enter his guilty plea by a desire for a lesser penalty, a fear of consequences of a jury trial, or both." The trial court accepted the guilty pleas and made findings of guilt. It imposed consecutive prison terms of 11 to 16.5 years for kidnapping and 5 years for felonious assault in Case No. 2024 CR 0134. It imposed a consecutive prison term of 11 to 16.5 years for rape in Case No. 2025 CR 0518. Bryant timely appealed, advancing two assignments of error.

## II. Analysis

{¶ 11} The first assignment of error states:

**THE DEFENDANT-APPELLANT DID NOT ENTER A KNOWING, INTELLIGENT AND VOLUNTARY ALFORD PLEA AS THE TRIAL COURT**

5

**FAILED TO COMPLY WITH THE ALFORD PLEA'S CONSTITUTIONAL STANDARDS.**

{¶ 12} Bryant challenges the validity of his *Alford* pleas, arguing that the trial court failed to satisfy all requirements for accepting them. Specifically, he contends the record lacks necessary strong evidence of his guilt. He asserts that such evidence is absent because the trial court did not require any sworn testimony, did not ask defense counsel about his investigation of the case, and did not inquire whether defense counsel had recommended guilty pleas.

{¶ 13} In *Alford*, the United States Supreme Court held that a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Alford*, 400 U.S. at 37. A defendant may plead guilty while protesting innocence if he "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id*. A strong factual basis for the plea enables a judge to determine whether it is being entered intelligently despite a defendant's claim of innocence. *Id*.

{¶ 14} A valid *Alford* plea requires a meaningful dialogue between a defendant and the judge taking the plea. *State v. Padgett*, 67 Ohio App.3d 332, 338 (2d Dist. 1990). In addition to the traditional Crim.R. 11 colloquy, "the trial court must determine that the defendant has made a rational calculation to plead guilty notwithstanding his belief that he is innocent." *Id*. "'This requires, at a minimum, inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence; it may require, in addition, inquiry concerning the state's evidence in order to determine that the likelihood of the defendant's being convicted of offenses of equal or greater magnitude than

6

the offenses to which he is pleading guilty is great enough to warrant an intelligent decision to plead guilty.'" *State v. Martin*, 2026-Ohio-954, ¶ 20 (2d Dist.), quoting *Padgett* at 338-339.

{¶ 15} Here Bryant contends the trial court failed to ensure the existence of a knowing, intelligent, and voluntary *Alford* plea. He claims his case is analogous to *State v. Gossard*, 2003-Ohio-3770 (2d Dist.), in which we held that the record failed to establish a valid plea. The defendant in *Gossard* had entered an *Alford* plea to one count of rape in exchange for dismissal of other charges. Prior to sentencing, he sought to withdraw the plea. The trial court overruled his motion and imposed a life sentence.

{¶ 16} On appeal in *Gossard*, we quoted *State v. Piacella*, 27 Ohio St.2d 92 (1971), for the proposition that an *Alford* plea is valid "'[w]here the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both.'" *Gossard* at ¶ 8, quoting *Piacella* at paragraph one of the syllabus.

{¶ 17} We noted in *Gossard* that the record in *Alford* established that defense counsel had interviewed witnesses and had recommended a guilty plea, that the trial court had heard sworn testimony before accepting the plea, and that the defendant had relied on defense counsel's recommendation and had entered a guilty plea to avoid the death penalty. *Id*. at ¶ 9. Unlike *Alford*, we pointed out that the record in *Gossard* did not reflect what defense counsel had done to investigate the case. Nor did the record indicate that defense counsel had recommended a guilty plea. We noted too that the trial court in *Gossard* had heard no sworn testimony, relying instead on the prosecutor's summary of the evidence. Finally, we

7

observed that the defendant himself never explained why he was entering an *Alford* plea. *Id*. at ¶ 10.

{¶ 18} After recognizing the foregoing distinctions between the defendant's situation in *Gossard* and the facts of *Alford*, we quoted *Padgett* for the proposition that a valid *Alford* plea requires, at a minimum, "an 'inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence,'" and it also may require an inquiry into the State's evidence. *Gossard*, 2003-Ohio-3770, at ¶ 11 (2d Dist.), quoting *Padgett* at 338-339. We recognized that "the essence of an *Alford* plea is that a Defendant's decision to enter the plea against his protestations of factual innocence is clearly and unequivocally supported by evidence that he exercised that calculus for the purpose of avoiding some more onerous penalty that he risks by, instead, going to trial on the charges against him." *Id*. at ¶ 12.

{¶ 19} While it was apparent that the defendant in *Gossard* had avoided multiple life sentences by pleading guilty, we saw no evidence that he had made his choice to plead guilty "with a full understanding of the risks of conviction and a desire to avoid them." *Id*. As a result, we held that the record failed to establish a knowing, intelligent, and voluntary *Alford* plea. *Id*. To avoid such an outcome in the future, we suggested that a trial court simply could "ask a defendant why he's entering the plea." *Id*. at ¶ 13. We opined that "[a] positive response portraying an *Alford* calculus will likely avoid later challenges to the plea." *Id*.

{¶ 20} In the present case, the trial court *did* ask Bryant why he was entering guilty pleas despite claiming innocence. Significantly, Bryant's response reflected a knowing and intelligent *Alford* calculus that included (1) his discussion of the matter with defense counsel, (2) his desire to avoid more serious punishment, and (3) his recognition of the strength of the State's case. He assured the trial court that he and his attorney thoroughly had discussed

the *Alford* pleas and potential defenses—which necessarily would have required consideration of the strength of the State's evidence—and that he was satisfied with counsel's advice. Bryant also noted that defense counsel had reviewed the Rule 11 notification and waiver form with him and had answered all questions. In that form, he acknowledged pleading guilty "because the evidence is strong and because I seek to avoid a greater penalty." The form included his acknowledgment that his pleas were "voluntary without coercion, force or threats" and that no promises had been made other than the plea agreement.

{¶ 21} When given a chance to explain why he was pleading guilty, Bryant stated, "Well, today, I'm pleading guilty to [get the] benefit of the plea bargain. I acknowledge that the—that there is sufficient evidence to convict me at trial. There are damning text messages from my phone; however, I still maintain I did not rape Victim 1 and did not assault Victim 2." The prosecutor also proffered a factual basis for the pleas to support Bryant's own admission about the State's evidence being "damning," "strong," and "sufficient" to convict him.

{¶ 22} Bryant nevertheless insists his *Alford* pleas are invalid because the trial court did not take sworn testimony, did not ask about defense counsel's investigation of the case, and did not determine whether defense counsel had recommended guilty pleas. Although the record in *Alford* included these things, which undoubtedly are relevant considerations, nothing in *Alford* or our opinion in *Gossard* imposed an affirmative duty on a trial court to hear sworn testimony and question defense counsel personally in every case. *Compare State v. Cunningham*, 2023-Ohio-4305, ¶ 27 (4th Dist.) (quoting Katz, Martin, & Macke, *Baldwin's Ohio Practice Criminal Law*, § 43.15 (3d Ed. Nov. 2019) for the proposition that "'[a]scertaining that there is a factual basis for the plea does not necessarily require the taking of testimony.'").

9

{¶ 23} In *State v. Martin*, 2026-Ohio-954, ¶ 18 (2d Dist.), we did recently cite *Padgett* for the proposition that an *Alford* plea is invalid if the record fails to disclose certain things, including that defense counsel's advice regarding a guilty plea was "competent in light of the circumstances surrounding the indictment." In support of that idea, *Padgett* cited the Ohio Supreme Court's 1971 *Piacella* decision. *Padgett*, 67 Ohio App.3d at 339. In *Piacella*, however, the Ohio Supreme Court merely found an *Alford* plea valid where the record disclosed "that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made." *Piacella*, 27 Ohio St.2d 92, at paragraph one of the syllabus. Notably, the *Piacella* court had no occasion to decide whether an *Alford* plea might be valid where, as here, defense counsel did not explicitly testify about his advice but the defendant's statements to the trial court clearly supported a reasonable inference that counsel had advised pleading guilty.

{¶ 24} Under *Alford*, the test is simply whether the defendant "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Alford*, 400 U.S. at 37. There are various ways a trial court may satisfy itself that a defendant is pleading guilty "with a full understanding of the risks of conviction and a desire to avoid them," as we found necessary in *Gossard*. Here Bryant's Rule 11 notification and waiver form explained his reasons for pleading guilty, including his desire to "avoid a greater penalty" and his recognition that the "evidence is strong." Bryant's oral statements to the trial court confirmed that he did not reach these conclusions alone.

10

He stated that he and his attorney had a thorough discussion of the charges against him and potential defenses. He also stated that he and his attorney had thoroughly reviewed the Rule 11 notification and waiver form, which memorialized Bryant's *Alford* pleas based on his recognition of the strength of the State's evidence and his desire to avoid a more severe sentence. Bryant indicated that he had a full understanding of the plea agreement and the Rule 11 notification and waiver form.

{¶ 25} Based on Bryant's representations to the trial court about his thorough discussions with defense counsel, we reasonably and safely can infer that counsel, who was present at the change-of-plea hearing, agreed with his assessment that pleading guilty in the face of strong evidence to obtain a lesser sentence was an intelligent choice. Although the better practice may have been for the trial court to question defense counsel personally, its failure to do so did not invalidate Bryant's pleas. *Compare State v. Satterwhite*, 2021-Ohio-2878, ¶ 31 (12th Dist.) ("We agree that it could be beneficial to have the defendant explain, or defense counsel put on record, the rationale for entering an *Alford* plea. As a matter of best practice, then, trial courts should consider questioning defendants or their counsel on the record regarding their rationale for entering an *Alford* plea. However, such an inquiry is not necessarily required, especially in a case such as this where the state's evidence against Satterwhite was so strong, and the benefit to pleading guilty to less than all charges for less than the maximum penalty was so obvious."). As we recognized in *Gossard*, *Alford's* requirements sometimes may be satisfied by a defendant's response to a question about the motivation for his guilty plea. Because Bryant's answer to that question portrayed a proper *Alford* calculus, we see no grounds for reversal.

{¶ 26} In his final argument, Bryant claims an incorrect statement by the trial court invalidated his *Alford* pleas. Specifically, the trial court asked whether he understood "that

11

by pleading guilty to these offenses by way of an *Alford* plea, you're doing so because pleading guilty and admitting—you would plead guilty and admit your guilt because the evidence is strong, and you seek to avoid a greater penalty, is that correct?" Bryant contends this statement was erroneous because it asked whether he believed the State's evidence was strong, whereas *Alford* required the trial court itself to believe the evidence was strong.

{¶ 27} By asking whether Bryant believed the evidence was strong, however, the trial court merely confirmed what he already had acknowledged in the Rule 11 notification and waiver form. We fail to see how Bryant was prejudiced by the inquiry. We note too that Bryant's assessment of the strength of the State's case was made in conjunction with defense counsel. Bryant acknowledged that he and his attorney had discussed his *Alford* pleas and possible defenses to the charges, which necessarily would have required counsel's assessment of the evidence against him. Finally, the trial court ultimately made its own finding that Bryant's *Alford* pleas were knowing, intelligent, and voluntary. Under these circumstances, we are unpersuaded that the trial court's question to Bryant about the strength of the State's evidence invalidated his pleas. Accordingly, the first assignment of error is overruled.

{¶ 28} The second assignment of error states:

**THE PLEA OF GUILTY WAS NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY ENTERED AS THE DEFENDANT-APPELLANT FAILED TO RECEIVE THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.**

{¶ 29} Bryant contends defense counsel provided ineffective assistance by allowing him to plead guilty while planning to appeal the trial court's pretrial rulings. He notes that after his *Alford* pleas, the same attorney filed a notice of appeal with a criminal docket statement form identifying the probable issues for review as "[a]ll pretrial rulings and the

12

sentence." Bryant claims defense counsel provided prejudicially deficient representation by allowing him to plead guilty while expecting to raise pretrial rulings on appeal where the guilty pleas foreclosed challenging the pretrial rulings.

{¶ 30} We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that the deficient performance prejudiced the defense. *Strickland* at 687; *Bradley* at paragraph two of the syllabus.

{¶ 31} We find no ineffective assistance in Bryant's case for several reasons. It is true that a guilty plea generally waives a defendant's ability to challenge pretrial rulings. *State v. Brooks*, 2025-Ohio-3292, ¶ 7 (2d Dist.). Indeed, a guilty plea waives all ineffective assistance of counsel unless counsel's deficient performance negated the knowing, intelligent, and voluntary nature of the plea. *State v. Davis*, 2026-Ohio-52, ¶ 11 (2d Dist.).

{¶ 32} Here, however, defense counsel's broad reference to "[a]ll pretrial rulings and the sentence" appears likely to have been a shorthand way to preserve anything and everything for appeal. The criminal docket statement need not be read to mean that defense counsel necessarily believed Bryant could challenge the trial court's suppression ruling on appeal. We note too that one of the trial court's pretrial rulings involved its acceptance of Bryant's *Alford* pleas, which he did raise on appeal.

{¶ 33} Even if defense counsel had mistakenly believed that Bryant could raise the suppression issue on appeal after guilty pleas, Bryant has made no effort to establish that a potentially viable suppression issue existed. That being so, he cannot establish prejudice arising from his waiver of the issue by pleading guilty. Bryant also cannot establish

ineffective assistance of counsel based on his attorney allowing him to plead guilty rather than no contest, because nothing indicates that the State would have agreed to no-contest pleas on the same terms as the *Alford* pleas. For each of these reasons, we overrule the second assignment of error.

### III. Conclusion

{¶ 34} We affirm the trial court's judgment in Case No. 2024 CR 0134 and Case No. 2025 CR 0518.

. . . . . . . . . . . . .

EPLEY, J., and HUFFMAN, J., concur.

14